# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| CORNELIUS BURNETT, | : Case No. 3:16-cv-198 |
| Plaintiff, | : Magistrate Judge Sharon L. Ovington |
| | : (by consent of the parties) |
| vs. | : |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

# DECISION AND ENTRY

## I.

Plaintiff Cornelius Burnett brings this case challenging the Social Security Administration's denial of his application for Supplemental Security Income. He applied for benefits on February 12, 2013 asserting he was under a disability due to adult ADHD (Attention Deficit Hyperactivity Disorder) and Bipolar Disorder. Plaintiff's counsel reports that Plaintiff had received child disability benefits due to ADHD and Bipolar Disorder.

Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that Plaintiff was not under a "disability" as defined in the Social Security Act. He therefore denied Plaintiff's application for benefits. Plaintiff brings the present case challenging ALJ Kenyon's non-disability decision. He seeks a remand to the Social Security

Administration for payment of benefits or, at a minimum, for further proceedings. The Commissioner seeks an order affirming ALJ Kenyon's non-disability decision.

## II.

Plaintiff asserts that he has been under a disability beginning on January 10, 2013. At that time he was thirty-five years old and was therefore considered a "younger person" under social security law. He earned his GED and thus has a high-school education. He worked in the past as a janitor.

Plaintiff testified at the hearing before ALJ Kenyon that he had taken classes at a community college until he quit about one or two months before the hearing. He quit school in part because he kept having run-ins with students and instructors. He was having difficulty catching on and always getting angry. He had verbal altercations twice a week. When he decided to quit school, he was on the verge of being asked to leave. He always had difficulty concentrating during class, so he would sit in front but his "mind would just wander." (Doc. #6, *PageID* #102).

Plaintiff acknowledged that he had experienced difficulty controlling his temper in the past. He testified that he periodically has auditory and visual hallucinations. He explained, "It's more hearing than, than anything…. But I'll be laying down, and it will seem like I will hear a knock on the door. And then, when I get to the door, there's no one there. Then, at times, I believe that people are calling my name, or I just hear regular conversations." *Id*. at 99. He hears things quite often, meaning every other day, mostly during the night. Periodically, he also sees things. On more than one occasion, he saw a

shadow at his door. Yet, when he looked through the peephole, "it was as if someone was walking away." *Id*. When he opened the door, no one was there.

Plaintiff testified that he was in prison for five years for dog fighting. He got into fights twelve times during his incarceration. He explained that he was placed in "isolation one time, but it …wasn't due me fighting, but I did do six months in there …." *Id*. at 102. He explained that he was in protective custody because he had fought so much, "and the guys just didn't want me..., they said I was causing too much trouble." *Id*.

The longest Plaintiff held a job was three to four months due to his anger and concentration problems. *Id*. at 105-06. He spends most of his time at home. He sometimes visits his neighbor or his girlfriend (about three times a week). He does not like to go out. He likes to be "left in the room." *Id*. at 106.

The administrative record contains opinions about Plaintiff's work limitations from several medical sources. Psychologist Dr. Bonds examined Plaintiff in October 2013. He diagnosed Plaintiff with Bipolar Disorder I, Most Recent Episode Mixed and rated his Global Assessment of Functioning at 45, indicating "'serious' symptoms …or any serious impairment in social, occupational, or school functioning…." Diagnostic and Statistical Manual of Mental Disorders at 34 (Am. Psychiatric Ass'n, 4th ed. revised, 2000).[1] Dr. Bonds believed that Plaintiff "was intentionally exaggerating his symptoms…." (Doc. #6, *PageID* #422). Dr. Bonds further explained, "Based upon

---

[1] Updated by Diagnostic and Statistical Manual of Mental Disorder (American Psychiatric Assc'n, 5th ed. 2013).

[Plaintiff's] presentation during the current evaluation, [he] would appear to have a great deal of difficulty handling day-to-day work pressures. He seems to be very easily confused and unable to focus. He would appear to have low frustration tolerance and difficulty dealing with interpersonal stressors and working around many people." *Id*. at 423.

In late October 2013, Dr. Haskins examined the record and concluded that Plaintiff had moderate functional limitations. *Id*. at 126

In February 2014, Plaintiff's treating psychiatrist at Day-Mont Behavioral Healthcare, Inc., Dr. Alwis, opined that Plaintiff was markedly impaired in nearly all areas of mental-work abilities. Dr. Alwis also concluded that he expected Plaintiff's marked limitations to last twelve months or longer. Dr. Alwis checked a box indicating that he believed Plaintiff was unemployable. *Id*. at 430. He also answered a questionnaire in February 2014 documenting the many psychological signs Plaintiff exhibited. These are detailed below. *Infra*, § IV. Dr. Alwis reported that Plaintiff's response to treatment had been poor "on a longitudinal basis," and he was "incapable of handling even minor stressors." (Doc. #6, *PageID* #428).

### III.

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—encompasses "any medically determinable physical or mental impairment" that precludes an applicant from engaging

4

in "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

As indicated previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five well-known sequential steps described by the regulations. *See* 20 C.F.R. § 416.920(a)(4); *see also Rabbers*, 582 F.3d at 652.

Moving through some initial findings, the ALJ reached steps two and three where he found that Plaintiff's severe impairments—bipolar disorder and adult ADHD—did not automatically qualify him for benefits. (Doc. #6, *PageID* #s 75-76). At step four, the ALJ found that Plaintiff could still perform a full range of work at all exertional levels with the following non-exertional limitations:[2]

> (1) limited to performing unskilled, simple, repetitive tasks; (2) occasional contact with coworkers and supervisors; (3) no public contact; (4) no teamwork or tandem tasks; (5) no close over the shoulder supervision; (6) no fast pace production work or jobs involving strict production quotas; and (7) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next.

*Id*. at 76. Plaintiff's non-exertional abilities, according to ALJ Kenyon, prevented him from doing his past work as a janitor but did not prevent him from performing a significant number of available jobs, such industrial sweeper/cleaner, hospital cleaner,

---

[2] The Social Security Administration refers to what a person can do as his or her "residual functional capacity." *See* 20 C.F.R. § 416.945(a); *see also Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

and laundry worker. *Id*. at 85. This led ALJ Kenyon to conclude, in the end, that Plaintiff was not under a disability and not entitled to benefits. *Id*.

## IV.

The present review of ALJ Kenyon's decision determines whether he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If he failed to apply the correct legal criteria, his decision may be fatally flawed even if the record contains substantial evidence supporting his findings. *Rabbers*, 582 F.3d at 651; *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). Substantial evidence supports a finding when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Plaintiff contends that the ALJ erred by (1) failing to place appropriate weight on his treating psychiatrist, Dr. Alwis's, opinions; (2) rejecting the overwhelmingly favorable evidence (favorable to Plaintiff ) and relying on insignificant evidence that made Plaintiff look more able to work than he is; (3) subjecting Dr. Alwis's opinions to greater scrutiny than the opinions provided by non-treating medical sources; (4) and substituting his own lay opinion in place of a medical expert's opinion.

6

The Commissioner contends that the ALJ included a narrative discussion that described how the evidence supported each of his conclusions and cited specific medical and nonmedical evidence. The Commissioner further contends, "The ALJ recognized the deference generally afforded treating physician opinions but found that Dr. Alwis's opinions were not entitled to either controlling or deferential weight because they were not fully supported by the record." (Doc. #10, *PageID* #765 (citing *PageID* #82)). Also, substantial evidence supports the ALJ's findings, according to the Commissioner, including the opinions of Dr. Haskins, a psychologist who reviewed the record at the request of the state agency.

The treating physician rule and additional regulatory factors contain the legal criteria applicable to Dr. Alwis's opinions. The treating physician rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014); 20 C.F.R. § 416.927(c)(2).

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

The ALJ declined to apply controlling or deferential weight to Dr. Alwis's opinions "as they are not fully supported by the record." (Doc. #6, *PageID* #83). The ALJ explained:

> The limitations assessed by Dr. Alwis primarily stem from the claimant's anger and irritability, which is well within his control. While Dr. Alwis noted significant deficits in attention and concentration, he was able to maintain sufficient focus and attention to attend Sinclair and certainly has sufficient focus to perform unskilled work. Dr. Alwis also appears to have simply accepted the claimant's subjective complaints with no inquiry into whether they were objectively supported.

*Id*.

There are multiple problems with the ALJ's reasons for rejecting Dr. Alwis's opinions. They begin with an error of law in the ALJ's finding that Dr. Alwis's opinions are not "fully supported by the record." This finding reveals that the ALJ reviewed Dr. Alwis's opinions under a higher legal standard than the standard mandated by the Regulations. *See* 20 C.F.R. § 416.927(c)(2). "For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is *not*

8

*necessary* that the opinion be *fully supported* by such evidence." Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (emphasis added). Given this instruction, the ALJ applied incorrect legal criteria by declining to place controlling weight on Dr. Alwis's opinions for the reason it was not fully supported by the record.

If, moreover, the ALJ discounted Dr. Alwis's opinions under the "supportability" factor, this too was error. Neither the supportability factor nor the other regulatory factors permitted the ALJ to reject Dr. Alwis's opinion by characterizing it as not fully support by the record. Instead, these regulations speak in relative—not absolute—terms. The supportability factor, for instance, provides, "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. § 416.927(c)(3).

The ALJ also rejected Dr. Alwis's opinions about Plaintiff's work limitations by finding that they "stem primarily from the claimant's anger, which is well within his control." (Doc. #6, *PageID* #83). This is problematic because the ALJ cites no evidence in support of his conclusion that Plaintiff's anger is well within his control. This conclusion falls purely within the psychiatric/psychological realm in this case, given Plaintiff's documented mental-health problems. The ALJ therefore erred by not relying on some evidence—rather than his own lay medical opinion—to conclude that Plaintiff could control his anger. *See Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F.App'x 488, 494 (6th Cir. 2011); *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." (citations omitted)). Additionally, although it might be reasonable to

9

generally assume that a healthy person can control his or her anger, it was not reasonable for the ALJ to make this assumption about Plaintiff without some reference to supporting evidence, particularly due to Plaintiff's well-documented mental-health problems. Indeed, by assuming Plaintiff could control his anger, the ALJ overlooked or ignored what is perhaps the central line of issues in the case: Did Plaintiff's bipolar and/or ADHA deprive him of the ability to control his anger and other symptoms? If not, what evidence reasonably supports this? If so, how does this impact the weighing of Dr. Alwis's opinions? Plaintiff's work abilities? Plaintiff's credibility? Dr. Bonds's opinions? Dr. Haskins's opinions?

This leads to further problems in the ALJ's decision: He rejected Dr. Alwis's opinions because Dr. Alwis "appears to have simply accepted the claimant's subjective complaints with no inquiry into whether they were objectively supported." (Doc. #6, *PageID* #83). This misperceives what evidence is relevant to an ALJ's evaluation of mental-health problems and their impact on a person's work abilities.

> In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices ...in order to obtain objective clinical manifestations of mental illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)) (other citation omitted). Dr. Alwis's answers in

the February 2014 questionnaire identified Plaintiff's "clinical mental status abnormalities" as "suspicious, guarded, paranoid," and his mood was "irritable, labile, volatile." (Doc. #6, *PageID* #427). As to his cognitive functioning, his ability to concentrate was poor, he was very distractible, and he exhibited poor frustration tolerance and frequent anger outbursts. Dr. Alwis also described Plaintiff as "chronically irritable, angry [and] hostile." *Id*. His "volatile episodes [were] very frequent." *Id*.

Dr. Alwis (and Plaintiff's treating mental-health therapist) observed Plaintiff and, as reported in treatment notes, he was very restless, unable to stay seated, hostile, demanding, mistrustful, avoidant, agitated, irritable, hyperactive, resistant, guarded, withdrawn, labile, impulsive, and paranoid; he was having tangential thoughts, inappropriate thoughts, auditory and visual hallucinations, blocked thought processes, incoherent thought processes, flight of ideas, loud speech, poor judgment and insight, problems with attention and concentration; he was also having significant problems staying focused and being preoccupied; and he was mistrustful, disheveled, distractible, and disorganized. *Id*. at 273, 281-83, 432-34, 440, 446, 452, 471, 475-76, 471-80, 508-09, 520, 531-32, 671-72, 679-90, 696-97, 703. On March 19, 2014, Dr. Vaish a psychiatrist who practices at Day-Mont Behavioral, noted that Plaintiff was getting "loud and agitated" with him. *Id*. at 445. Because Dr. Alwis observed the above signs, and because such clinically observable signs constitute the type of evidence that supports his opinions about Plaintiff's mental disorders, *see Blankenship*, 874 F.2d at 1121, substantial evidence does not support the ALJ's finding that Dr. Alwis did not rely on objective medical evidence.

The record contains additional evidence that was consistent with and supported Dr. Alwis's opinions. In May 2013, Dr. Vaish observed that Plaintiff was "paranoid, labile, distracted. Patient seems responding to internal stimuli, he refused to sit on chair, playing with phone, got angry and when asked to sit on chair. Initially he refused to answer questions, then he said he hear [sic] voices, get [sic] angry easily, then started saying why Dr. Alwis is not working here anymore." (Doc. #6, *PageID* #432).

During additional treatment sessions (at Majahan Therapeutics), Plaintiff had limited insight and judgment. *Id*. at 719, 721, 723. His behavior was uneasy, tense, and inappropriate. He was hypervigilant, and he wanted the door open and initially did not want to sit. His thought processes were circumstantial and tangential. He had some auditory hallucinations. *Id*. at 721, 723. His mood was angry and overwhelmed. *Id*. at 721. He was also agitated, restless, withdrawn, guarded, preoccupied, and phobic. *Id*. at 718-19.

During his hospitalization from August 12 to 14, 2014, Plaintiff was agitated and spoke in a very loud, angry voice. *Id*. at 631. He had hearing and auditory hallucinations of his neighbor's dog barking (his neighbor no longer had a dog). *Id*. at 547. He was threatening to kill his neighbor over it. He had recently been jailed for assaulting his girlfriend. He had no problem with the idea of killing someone "in certain cases, why not." *Id*. at 633. He was observed to be mistrustful, demanding, hostile, guarded, and agitated." *Id*. at 634. His affect was flat and his mood was angry and hostile. His impulse control was poor; he was unaware of his mental problems. His judgment was impaired.

On August 13, 2014, Plaintiff was again agitated and had homicidal ideation. *Id*. at 641. He verbally threatened his hospital roommate. *Id*. at 639. His affect was constricted and labile. His mood was labile. He was a poor historian. He had auditory and visual hallucinations. Plaintiff had poor judgment and insight. He was a moderate risk for violence. *Id*. at 643. He became severely agitated and angry over the fact he might remain in the Psychiatric Inpatient Unit. *Id*. at 537-38, 645. Campus police escorted him to the Psychiatric Unit because he had become physically threatening. *Id*. at 545.

Viewed together, the above evidence from Plaintiff's treatment records at Day-Mont Behavioral and from his hospitalization in August 2014 starkly contrasts with the ALJ's conclusions that Dr. Alwis simply accepted Plaintiff's subjective statements and that the record lacks objective evidence in support of Dr. Alwis's opinions.

The ALJ also rejected Dr. Alwis's opinions because Plaintiff "was able to maintain sufficient focus to attend Sinclair and certainly has sufficient document to perform unskilled work." *Id*. The ALJ cited no evidence in support of this. This was needed because Plaintiff testified that he had difficulty concentrating during class. Even when he sat in the front row during class, his "mind would just wander." (Doc. #6, *PageID* #102). Plaintiff also described the significant problems he had in getting along (arguing) with other students and his instructors at Sinclair. These problems became so severe that Plaintiff stopped attending Sinclair just before he was thought he would be expelled. The ALJ apparently rejected this testimony as part of his evaluation of Plaintiff's credibility. Yet, there seems to be no contrary evidence—*i.e.*, evidence

13

showing that he stayed in school after he said he quit or any indication that Plaintiff graduated from Sinclair. And, Plaintiff's testimony about his difficulties at Sinclair—most notably, getting along with students and instructors, inability to focus during class, and low frustration tolerance—was wholly consistent with the information in his treatment notes from Day-Mont Behavioral. Given this along with the ALJ's lack of citation to evidence supporting his conclusions about Plaintiff's ability to sufficiently focus at Sinclair, it was unreasonable for the ALJ to conclude that Plaintiff could maintain focus and attention while at Sinclair.

Lastly, the ALJ erred by crediting Dr. Haskins's opinions over Dr. Alwis's opinions. The ALJ's error lies in his decision to place great weight on Dr. Haskins's opinions "as they are consistent with the objective, clinical findings in the record." *Id.* at 83. This is the sole reason the ALJ provided for crediting Dr. Haskins's opinions. The ALJ applied more rigorous scrutiny to Dr. Alwis's opinions. The same error occurred in *Gayheart*, 710 F.3d at 379, where "[t]he ALJ's failure to apply the same level of scrutiny to the opinions of the consultative doctors on which he relied, let alone the greater scrutiny of such sources called for by 20 C.F.R. § 404.1527, further demonstrates that his assessment of [a consulting physician's] opinions failed to abide by the Commissioner's regulations and therefore calls into question the ALJ's analysis." *Id.* (citing *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)). This error in the present case was particularly significant given the ALJ's near-complete reliance on Dr. Haskins's opinions over Dr. Alwis's opinions to support his assessment of Plaintiff's residual functional capacity.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

# V.

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own Regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong

15

while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, an ALJ should be directed to evaluate the evidence of record, including Dr. Alwis's opinions and the other evidence of record, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings, and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Supplemental Security Income should be granted.

## IT IS THEREFORE ORDERED THAT:

1. The Commissioner's non-disability finding is vacated;

2. No finding is made as to whether Plaintiff Cornelius Burnett was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case is terminated on the Court's docket.


September 8, 2017  *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge